## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER L. CRAIG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **2:08-CV-2329-VEH** |
| | ) | |
| **ALABAMA POWER CO.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

## Introduction

Plaintiff initiated this job discrimination case pursuant to Title VII and 42 U.S.C. § 1981 on December 12, 2008. (Doc. 1). The claims still pending against Defendant are race discrimination generally, racially hostile work environment, and constructive discharge based upon race.[1] (Doc. 1 at 5-6; *see also* Doc. 36 at 1). The

---

[1] The magistrate judge observed that constructive discharge is possibly more properly characterized as a certain type of an adverse employment action that may prima facially support a discrimination claim. (Doc. 36 at 1 n.1 (citations omitted)); *see, e.g., Rowell v. BellSouth Corp.*, 433 F.3d 794, 806-07 (11th Cir. 2005) ("Because Rowell was not faced with an impermissible take-it-or-leave-it choice between retirement or discharge, we find that he cannot establish an adverse employment action of constructive discharge and his ADEA claim fails.") (emphasis added). The magistrate judge also addressed "the constructive discharge issue" "in the context of the plaintiff's discrimination claim" (Doc. 36 at 1 n.1) as opposed to as a potential tangible employment action in the context of a harassment claim. *See, e.g., Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) ("A tangible

magistrate judge filed a report and recommendation (Doc. 36) on July 26, 2010, recommending that Defendant's motion for summary judgment (Doc. 30) be granted as to all remaining claims and that this cause be dismissed with prejudice. (Doc. 36 at 25).

Plaintiff filed objections to the report and recommendation on August 9, 2010. (Doc. 37). The case was reassigned to the undersigned on August 12, 2010. (Doc. 39). On September 1, 2010, Defendant filed its response to Plaintiff's objections to the report and recommendation. (Doc. 41).

Having carefully considered the materials in the court file, including the report and recommendation and all related briefing, and after conducting a *de novo* review of the record relating to Plaintiff's objections, the court is of the opinion that the magistrate judge's report is due to be **ADOPTED**, and his recommendation is due to be **ACCEPTED**. Relatedly, Plaintiff's objections are due to be **OVERRULED**.

## <u>Plaintiff's Objections</u>

Regarding the concerns raised in his objections more specifically, Plaintiff

_____

employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."). In filing his objections, Plaintiff lodges no complaint about the use of this approach by the magistrate judge. (*See generally* Doc. 37).

2

generally contends that the magistrate judge erred in determining that there are no

genuine issues that must be determined by the trier of fact.  (Doc. 37 at 1).  He further

specifically states that:

1)    In making any assessment of the merits of a motion for summary judgment, this Court must view all evidence in a light most favorable to the Plaintiff and must draw all reasonable inferences against the moving party.  Celotex Corp. v. Catrett, 477 U.S. 242 (1986).

2)    In its responsive brief, as well as the incidents cited in Defendants motion, Plaintiff refers to 9 different instances of racially motivated conduct on behalf of the Defendant and its agents.

3)    Those incidents are i) Defendant's employees called the Plaintiff "boy" repeatedly, ii) Defendant's employees falsely accusing the Plaintiff of being a drug dealer, iii) Defendant's employees regularly threatened the Plaintiff with beatings and death, iv) Defendant's employees would intentionally drop their tools and force the Plaintiff to pick them up in an effort to harass him, v) Defendant's employees discussing openly and directly the size of the Plaintiff's penis because of the racial stereotype that black men are larger, vi) Defendant's employees asked the Plaintiff if a mentally disabled African American woman was his girlfriend or his mother, vii) Defendant's employees mimicked shooting the Plaintiff, viii) Defendant's employees told the Plaintiff the work place was not the "ghetto" or the "hood" and that African Americans are known for wearing their pants low, and ix) Defendant's employee kicked a chair Plaintiff was sitting in with enough force to pop his back.

4)    All of these incidents occurred over a very short period of two months.

5)    The Report and Recommendation, while admitting some of the

incidents complained of are racially motivated on their face, fails to draw the reasonable inference that the other incidents, while not racial on their face, are at least in part racially motivated.

6) In support of that inference, it is reasonable to assign a racially derogatory intent to actions based upon the Defendant's employees' blatant racially motivated comments such as the conversation regarding the penis size of African Americans and the Defendant's employees' insistence that a mentally disabled African American woman must be the Plaintiff's girlfriend or mother.

7) The facts cited in the briefs before this Court indicate that the Plaintiff was put through a gauntlet of racially motivated harassment from the moment his tenure began until he was forced to quit by the intolerable nature of the Defendant's employees' conduct.

8) Said conduct was severe and pervasive to the point that Plaintiff could not be expected to continue to work in such an environment.

9) The numerous incidents coupled with the fact that they occurred over a two month period of time tends to factually support the claims alleged in the complaint. Namely that the Plaintiff was subjected to a hostile work environment during his employment with the Defendant for which a jury could find the Defendant is liable.

10) Plaintiff's failure to avail himself of the procedures outlined by Defendant is not fatal to his claim as it is undisputed Plaintiff, Christopher Craig, complained to co-worker, Marvin Johnson. Johnson told Craig's immediate supervisor, lead lineman Beetle of the complaints of racial harassment throughout his employment with Defendant. According to Johnson's deposition testimony Beetle "just kind of played it off, you know, just like, you know, it wasn't none of it serious, just carrying." (Johnson Depo P. 41,

4

line 3-13).

(Doc. 37 at 1-2).

Thus, procedurally, Plaintiff's objections focus primarily upon his racially hostile work environment claim, and secondarily upon constructive discriminatory discharge. (*See generally* Doc. 37). As a result, Plaintiff does not challenge the propriety of entering summary judgment in favor of Defendant regarding any other potentially actionable racial discrimination or harassment. (*See generally* Doc. 37). Substantively, the court disagrees with the merits of Plaintiff's hostile work environment and constructive discharge objections and, instead, for the multiple reasons explained below, concurs with the factual determinations suggested and legal conclusions recommended by the magistrate judge.

### *De Novo* Review Standard

Before the court engages in its own analysis, however, it is important to emphasize that the magistrate judge is not making any <u>final</u> factual determinations or rulings on summary judgment, but rather only providing recommendations. Instead, the undersigned has reviewed *de novo* those portions of the record that relate to Plaintiff's objections and separately and independently determined the correctness of any objected to findings and recommendations.

This accepted process is set forth statutorily in 28 U.S.C. § 636, which states

in part that:

**(b)(1)** Notwithstanding any provision of law to the contrary–

**(A)** a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.

**(B)** <u>a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A)</u>, of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.

**(C)** the magistrate judge shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties.

Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court.  A judge of the court shall make a *de novo* determination of <u>those portions</u> of the report or specified proposed findings or recommendations <u>to which objection is made</u>.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge may also

> receive further evidence or recommit the matter to the magistrate judge
> with instructions.

28 U.S.C. § 636(b) (footnotes omitted) (emphasis by underlining added).

Regarding the *de novo* review requirement in particular, the district court's obligation is to independently review those portions of the record to which objections are made as opposed to reviewing the entire record. *See, e.g., Washington v. Estelle*, 648 F.2d 276, 282 (5th Cir. 1981) ("Both in his brief and at oral argument, Washington maintains that the District Court erred in reviewing *de novo* only the objected to portion of the magistrate's findings, rather than reviewing the entire record *de novo*.");[2] *id.* ("Based on the language of this order, we are convinced that the District Judge sufficiently complied with the act which requires "'a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'"") (citations omitted).[3]

_____

[2]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[3]  In *Washington*, the district judge's order adopting the magistrate judge's proposed decision stated:

> The Court having considered the Findings and Recommendations of the United States Magistrate filed on September 19, 1979, and the Court further having reviewed and considered the written objections filed by the Petitioner herein on October 2, 1979, and the Court having made a de novo review of the objections raised by the Petitioner and the Court

7

## Hostile Work Environment on the Basis of Race

Consistent with this *de novo* assessment, the undersigned has independently determined that Defendant is entitled to the entry of summary judgment consistent with the alternative bases suggested by the magistrate judge in his ruling. Turning to Plaintiff's first objection, both the magistrate judge and the undersigned have viewed <u>all evidence</u> in a light most favorable to Plaintiff. In fact, the magistrate judge's report and recommendation expressly includes this principle in the "STANDARD OF REVIEW" section. (Doc. 36 at 2).

However, reviewing the record in a light most favorable to the non-movant does not mean that the magistrate judge or this court is obligated to accept naked assertions made by Plaintiff (or his counsel) that are unsupported by any substantiating evidence or that are directly at odds with uncontradicted proof offered by Defendant. *See, e.g., Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) ("'This court has consistently held that conclusory allegations <u>without specific</u>

---

being of the opinion that the findings are correct and that the objections are without merit,

IT IS, THEREFORE, ORDERED that the Findings, Conclusions and Recommendations of the United States Magistrate are adopted.

648 F.2d at 282 (emphasis added) (citation omitted).

supporting facts have no probative value.'") (emphasis added) (citation omitted), *called into doubt on other grounds by Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1253 n.11 (11th Cir. 2007). Relatedly, it is not the court's responsibility to search the body of evidence (or lack thereof) upon which Plaintiff relies for a set of triable issues once "a motion for summary judgment is properly made and supported[;]" rather, it is incumbent upon Plaintiff, as the opposing party, to "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2) (emphasis added). Further, Plaintiff's brief in opposition (doc. 34) to Defendant's brief in support of Defendant's motion for summary judgment (doc. 32) fails to dispute any of the facts set out in Defendant's Statement of Undisputed Facts. (Doc. 32, ¶¶ 1-64). Thus, those statements are admitted for summary judgment purposes. (*See*, March 24, 2009, Scheduling Order, Doc. 14) ("The parties shall comply with the summary judgment procedures outlined in Appendix I"); (*id.* at 3 ("*All material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment*") (Appendix I to Doc. 14 at A-7) (emphasis in original)).

Additionally, later in his ruling, the magistrate judge stated that even assuming that "a jury believed that all of the incidents of which the plaintiff complains occurred, a jury could not reasonably find that there had been racial harassment so

9

severe and pervasive that the terms and conditions of the plaintiff's employment were altered." (Doc. 36 at 19-20 (emphasis added)).  The undersigned agrees that, even accepting as true <u>all nine instances</u> relied upon by Plaintiff in his objections, the record, on the whole, does not substantiate that Plaintiff objectively "endure[ed] conduct that was so severe or pervasive that it altered the terms or conditions of h[is] employment." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1248 (11th Cir. 1999).

Further, based upon the magistrate judge's review of Plaintiff's deposition transcript, the report and recommendation includes the same complete list of the nine incidents included in Plaintiff's objections (*compare* Doc. 36 at 16-17 *with* Doc. 37 ¶ 3) and then unambiguously explains why only four of these incidents "<u>arguably</u> could have any [racial overtones]", under the totality of the circumstances. (Doc. 36 at 17-18). Thus, the magistrate judge properly considered only the four potentially racially motivated acts. *See, e.g., Gupta v. Florida Bd. of Regents*, 212 F.3d 571 (11th Cir. 2000) (only potentially racially-motivated acts count in assessing a plaintiff's complaints of a hostile work environment).

Because the Plaintiff has objected to the magistrate judge's recommendation as to nine separate incidents complained of by Plaintiff, the court will analyze each of those incidents.

First, the court turns to the evidence regarding Plaintiff's allegation that Defendant's employees called the Plaintiff "boy" repeatedly.  This court finds, as did the magistrate judge, that the use of the word "boy," when directed by a non-African American to an African-American, is potentially racially hostile.  However, the Supreme Court has instructed that the use of the term cannot be analyzed without also looking at context, as the magistrate judge did.  *See Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006) (holding that, while use of the term "boy" "will not always be evidence of racial animus, it does not follow that the term, standing alone, is always benign.  The speaker's meaning may depend on various factors, including context, inflection, tone of voice, local custom, and historical usage.")

On remand, the Eleventh Circuit held that "the use of 'boy' by [an employee of the defendant] was not sufficient, either alone or with the other evidence, to provide a basis for a jury reasonably to find that [the defendant's] stated reasons for not promoting the plaintiffs was racial discrimination."  *Ash v. Tyson Foods, Inc.*, 190 Fed. Appx. 924, 926, (11th Cir. 2006), *cert. denied*, 549 U.S. 1181 (2007).  Further, the Eleventh Circuit instructively explained that:

> The usages were conversational and as found by the district court were non-racial in context. But even if somehow construed as racial, we conclude that the comments were ambiguous stray remarks not uttered in the context of the decisions at issue and are not sufficient circumstantial evidence of bias to provide a reasonable basis for a

finding of racial discrimination in the denial of the promotions. . . .
[E]ven if "boy" is considered to have general racial implications[,] [t]he
statements . . . showed no indication of general racial bias . . . .
Moreover, there is nothing in the record about the remaining factors to
support an inference of racial animus in the use of the term "boy."

*Ash v. Tyson Foods, Inc.*, 190 Fed. Appx. at 926.

As pointed out by Defendant in its reply brief (Doc. 35), the Eleventh Circuit

has applied this "common sense" analysis in hostile work environment cases based

on gender. *See Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 810 (11th

Cir. 2010) ("Equally important to our inquiry here is the common-sense rule that the

context of offending words or conduct is essential to the Title VII analysis. Even

gender-specific terms cannot give rise to a cognizable Title VII claim if used in a

context that plainly has no reference to gender.").

Here, it is undisputed that Craig was the only African-American employee

hired on the Demopolis Division work crew. (Plaintiff's brief, Doc. 34 ¶ 1). It is also

established by Defendant (through its unrefuted - and therefore admitted - Statement

of Facts and by evidence admissible at trial supporting such facts) that "[s]everal

members of the crew use[d] the term 'boy' on a regular basis, both with African-

American and Caucasian employees." (Doc. 32 ¶ 56). Thus, this court agrees with

the magistrate judge's findings that, in the particular context of Plaintiff's

employment by Defendant, "there is no evidence that the term as used in this case had

a discriminatory meaning.  It is undisputed that [Plaintiff] was not the only person referred to as 'boy[;]' Randy Baker [a Caucasian] and others referred to other Caucasian employees, and to each other, as 'boy,' and no person who used the term 'boy' when referring to [Plaintiff] used the term in a racially demeaning context." (Doc. 36 at 18).  *See, e.g., Baldwin v. Blue Cross/Blue Shield of Alabama*, 480 F.3d 1287, 1301 (11th Cir. 2007) ("As our earlier description of the facts details, there was a lot of profanity, but the problem for Baldwin's discrimination case [based upon harassment] is that very little of it was aimed specifically at females."); *id.* ("It would be paradoxical to permit a plaintiff to prevail on a claim of discrimination based on indiscriminate conduct.") (footnote omitted).

Second, after independently reviewing the record in this case, the court agrees with the magistrate judge that:

> [as to Defendant's employees falsely referring to the Plaintiff as being a drug dealer,] [i]t is true that the comment itself is not per se racial in nature.  However, even if black men selling drugs is a racial stereotype, there is no evidence that this particular comment was made more than once, or that it was intended as anything more than a joke.  The same holds true for the comment as to whether a black woman was the plaintiff's mother or girlfriend.  The penis comment was a racial statement, but it is the only incident that was clearly racial, but, again, it happened only one time.  It is also not extreme.

(*Id.*).

Although the magistrate judge stated that "the incident and conduct which

13

occurred when Baker told [Plaintiff] to turn his hat around" (*id.*) "arguably" could have some connection with Plaintiff's race, the magistrate judge did not discuss why he felt the evidence surrounding this incident and conduct was or was not sufficient, either alone or in context, to show that Plaintiff was subjected to a racially hostile work environment.  This is the same incident in which Baker also told Plaintiff he was not working in the "hood" or the "ghetto" and then, according to Plaintiff's testimony, pulled his pants down and imitated how he thought African Americans walked.  (Doc. 36 at 17; *see also* Doc. 31-17 at 104).  Similar to the drug dealer and penis comments, while these statements and actions by Baker certainly have racial implications, there is no evidence that this occurred more than once and, in particular, considering the complete context of how it happened shows that even if, in hindsight, Baker's conduct was ill-advised, it was not meant to be severe or racially humiliating in nature, but rather was intended as a joke.  (*See, e.g.*, (Doc. 32 ¶ 30 ("According to [Plaintiff], people were laughing and Baker 'was picking at me, trying to make a joke.'")); *Faragher v. City of Boca Raton,* 524 U.S. 775, 778 ("Properly applied, the[se] [standards for judging hostility] will filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'") (emphasis added) (citation omitted).

Plaintiff's charge that employees would intentionally drop their tools and force

him to pick them up does not reflect any explicit or implicit connection to race either alone or in context.  During his deposition, Plaintiff more specifically complained about Norman Averette's ("Averette") purposefully dropping tools around him on several occasions and asking him to pick them up.  (Doc. 32 ¶ 35).  Plaintiff acknowledged that Averette used no words which suggested purposefulness and offered no reason for why he believed Averette did this intentionally other than it was "the way [he] felt."  (Doc. 31-18 at 201).  Averette denies that he has ever deliberately dropped tools and instead swears that anytime this has happened "it has been an accident."  (Doc. 31-5 ¶ 9).  Additionally, Plaintiff has conceded that dropping a tool as a lineman, the position held by Averette, "is not unheard of."  (Doc. 32 ¶ 35).

Therefore, on the whole, the record supports one inference only - that Averette's actions regarding tools were unintentional.  Moreover, to the extent such occurrences were in fact not happenstance, Plaintiff has failed to offer any proof that race either directly or indirectly played a role.  In particular, Plaintiff's mere belief that Averette did this just to "aggravate" him, without more, does not establish a racial nexus.  (Doc. 32 ¶ 35).

Similarly, the instance in which Plaintiff's chair was kicked with enough force to pop his back is not linked to race.  The chair incident was a one-time occurrence and is the only example that Plaintiff has offered which involved any physical aspect.

15

Certainly, there is nothing overtly racial about kicking someone's chair.  Further, the entire context gives no suggestion that the act was intended to be racially demeaning. Indeed, Plaintiff admitted in his deposition that the employee who kicked his chair indicated that he did so because he thought Plaintiff was sleeping.  (Doc. 31-18 at 105); *see also Mendoza*, 195 F.3d at 1253 ("Title VII was never intended to protect employees from all unpleasant and rude conduct in the workplace.") (footnote and citations omitted).

Regarding Plaintiff's objection that employees would regularly threaten him with beatings and death, the court preliminarily looks at this type of conduct as being potentially racial in nature.  *See, e.g., Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1269 (11th Cir. 2008) ("In addition to uttering racial slurs, Walker threatened Goldsmith with violence."); *id.* ("Specifically, Walker told Goldsmith that Walker was going to make Goldsmith's son an orphan.").  However, the undisputed evidence in this case establishes that the threats made to Plaintiff were only verbal, were not accompanied with any racial epithets, and were not carried out in an assaulting manner.

Further, similar words were directed at Caucasian employees as well as at Plaintiff.  (*See, e.g.*, Doc. 32 ¶ 29 ("Baker has told numerous people in Demopolis that he would kick or beat their ass, including Caucasian employees.")).

Additionally, there is evidence tending to show that such words were actually used in jest as opposed to being meant literally. (*See, e.g.*, Doc. 32 ¶ 27 ("Baker is known as a jokester in Demopolis."); *id.* ¶ 29 ("According to Marvin Johnson, who is African American, '[t]hat was just the way Randy [Baker] talks.'"); *id.* ¶ 32 ("[C]o-workers considered Baker's comments to be made in a joking fashion.")). Therefore, while violent language used in the workplace may under certain circumstances constitute evidence of racial hostility, in this particular situation, there is a failure of proof on Plaintiff's part that connects the threatening words that he heard to any racial animus. *See, e.g., Baldwin*, 480 F.3d at 1301-02 ("<u>[Title VII] does not prohibit harassment alone</u>, however severe and pervasive. <u>Instead, Title VII prohibits discrimination</u>, including harassment that discriminates based on a protected category such as sex [or race].") (emphasis added).

Similar analysis applies to Plaintiff's objection that employees mimicked shooting him with a gun. In fact, Plaintiff's testimony substantiates that this occurred on one occasion on his last day of work and involved one other employee, Jarrod Kane ("Kane"). (Doc. 31-18 at 100-01). Regarding this incident, Plaintiff testified that he knew Kane "[wa]s just kidding" and that Kane "didn't say a word." (Doc. 31-18 at 101). Therefore, while pretending to shoot someone in some situations may indicate racially-motivated ill will, here the context of the record, including Plaintiff's

impression that Kane was joking as opposed to exhibiting actual aggression towards him, that no racially derogatory language was used, and that it happened just once, does not support such a racial (or severity) link.

Therefore, as analyzed above, there are four sufficiently race-related actions for the court to consider in evaluating the frequency component of Plaintiff's racial hostile environment claim:  the drug dealer, African-American woman, penis, and "ghetto/hood" comments.  This court has separated potentially racially-motivated acts from non-racially-charged conduct because binding Eleventh Circuit precedent mandates such separation in hostile work environment harassment cases.  *See, e.g., Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 583 (11th Cir. 2000) ("Innocuous statements or conduct, or boorish ones that do not relate to the sex [or race] of the actor or of the offended party (the plaintiff), <u>are not counted</u>.") (emphasis added), *overruled on other grounds as recognized by Crawford v. Carroll*, 529 F.3d 961, 973-74 (11th Cir. 2008) ("Thus, the *Burlington* Court effectively rejected the standards applied by this court in both *Stavropoulos* and *Gupta* that required an employee to show either an ultimate employment decision or substantial employment action to establish an adverse employment action for the purpose of a Title VII retaliation claim.") (footnote and citations omitted).  Having done so, the court concludes that Plaintiff's second, third, fifth, and sixth objections relating to the

18

magistrate judge's failure to properly evaluate all nine instances of purportedly racially insensitive conduct offered by Plaintiff are not well-taken.

In his fourth objection, Plaintiff maintains that all nine incidents occurred within a two-month time period.  (Doc. 37 at 2).  Plaintiff similarly states in his ninth objection that "[t]he numerous incidents <u>coupled with the fact that they occurred over a two month period of time</u>" establish that "Plaintiff was subjected to a hostile work environment during his employment with the Defendant."  (*Id.* (emphasis added)).  The record substantiates that Plaintiff began his employment with Defendant on October 2, 2007, and that his employment ended roughly two months later, on December 6, 2007.

However, despite this compact period of time, the court remains persuaded that Plaintiff's claim of harassment still does not objectively meet or surpass the standard for actionable conduct established by *Mendoza* as well as other controlling harassment decisions.  In particular, while potentially racially harassing behavior occurred, as explained above, such behavior either has been affirmatively established by Defendant not to have been racial in nature (because it was directed both to Plaintiff and to Caucasians) or was so infrequent as to fail to meet the frequency component. *See, e.g., Mendoza*, 195 F.3d at 1249 (determining that "a single instance of slight physical contact, one arguably inappropriate statement, and three instances

19

of Page's making a sniffing sound" "occurr[ing] over an eleventh month period" "were far too infrequent to alter the conditions under which Mendoza was required to perform her job") (citation omitted).

Further, even if such frequency component were met, the caliber of conduct complained about would still be lacking in the areas of "severity[;]" "physically threatening or humiliating[;]"[4] and "unreasonabl[y] interfer[ing] with the employee's job performance."[5] *Mendoza*, 195 F.3d at 1246 (citation omitted); *id.* at 1248 ("The other factor-frequency of the harassing conduct-is also for the most part lacking, but

---

[4] Only one situation involved any physical element, *i.e.*, when Plaintiff's chair was kicked "with enough force to pop his back," and even so, such an isolated action's purported connection to Plaintiff's race is nonexistent.

[5] In an effort to show satisfaction of this "unreasonably interfering with work" factor, Plaintiff states in his response brief that:

> Mr. Craig became depressed throughout his employment with Alabama Power as a result of the harassing, discriminatory environment. Additionally, Mr. Craig's personal relationships were affected by the harassment because he became difficult to get along with due to his depression regarding his job.

(Doc. 34 at 8). However, "[s]tatements by counsel in briefs are not evidence," *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980), and Plaintiff points to no underlying evidence to corroborate these assertions. Further, while this court's own independent review of Plaintiff's deposition transcript confirms that Plaintiff did testify about some depression that he suffered after his employment with Defendant ended (*see, e.g.*, Doc. 31-18 at 297-300), the court was unable to locate any testimony which confirms that his depression began while he was still an employee, much less provides details on how his mental state negatively impacted his ability to function in his job, including a deterioration in his relationships with other employees.

to the extent Mendoza showed frequent conduct, the frequency of it does not compensate for the absence of the other factors."); *see also id.* at 1249 ("Given normal office interaction among employees, the following and staring in the manner described by Mendoza are not the type of conduct that can render Mendoza's claim actionable, <u>even with evidence that the following and staring were 'constant' and thus 'frequent' under the *Harris* factors</u>.") (emphasis added); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) ("Of course, as the courts in both *Rogers* and *Henson* recognized, not all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII.") (citations omitted).

Additionally, the actual number of <u>racially-connected occurrences</u>, which binding precedent holds is the appropriate figure to focus upon, at the most amounts to only four isolated incidents (or approximately one occurrence biweekly) and renders Plaintiff's frequency argument dramatically less compelling. Therefore, for all these reasons, the courts rejects the substance of Plaintiff's challenges in his fourth and ninth objections.

Plaintiff's tenth objection contests the validity of Defendant's *Faragher* affirmative defense to racial harassment.[6]   Specifically, Plaintiff suggests that his

---

[6]   The magistrate judge's report states that "[t]he parties agree that the plaintiff makes a claim for vicarious liability, and <u>that the two-pronged defense, applicable</u>

admitted noncompliance with Defendant's widely disseminated anti-harassment policy (including Plaintiff's uncontested written acknowledgment thereof) is not fatal to his claim because he nevertheless informally reported the harassment to a coworker.  In raising this issue, not only does Plaintiff fail to cite to any supporting authority, *see, e.g., Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (stating that an argument made without citation to authority is insufficient to raise an issue before the court), but also his tenuous position appears to be in direct contradiction with the Eleventh Circuit cases cited by the magistrate judge in his report, including *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269 (11th Cir. 2002) and *Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290 (11th Cir. 2000).  In particular, the *Madray* court expressly held that an employer "cannot be considered to have been placed on notice of [] harassing behavior by the plaintiff['s] informal complaints to individuals not designated by [the

---

only to supervisory conduct, would be applicable if proven." (Doc. 36 at 20 (emphasis added)).  "The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807.  Plaintiff's objection is notably silent concerning the magistrate judge's express indication of Plaintiff's acquiescence in the applicability of a *Faragher* defense, if substantively shown by Defendant.

22

employer] to receive or process sexual harassment complaints." *Id.* at 1300.  Such

identical ineffectual informal reporting <u>admittedly</u> occurred here.

Accordingly, Plaintiff's *Faragher*-related objection is ill-conceived and

unpersuasive.  Relatedly, application of Defendant's affirmatively proven *Faragher*

defense properly provides an alternative basis for granting summary judgment on

Plaintiff's hostile work environment claim without any regard to whether Plaintiff's

situation "sufficiently" meets the severe or pervasive *prima facie* prong.  *See Gupta*,

212 F.3d at 583 ("The fourth element--that the conduct complained of was

'<u>sufficiently severe or pervasive</u> to alter the conditions of employment and create an

abusive work environment'--<u>is the element that tests the mettle</u> of most sexual

harassment claims.") (emphasis added).

### <u>Constructive Discharge on the Basis of Race</u>

Objections seven and eight pertain to the magistrate judge's ruling on

Plaintiff's race discrimination claim premised  upon constructive discharge.  As the

Eleventh Circuit has made clear, "[e]stablishing a  constructive discharge claim is <u>a</u>

<u>more onerous task</u> than establishing a hostile work environment claim." *Bryant v.*

*Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009) (emphasis added) (citation omitted).  In

particular, "[a] plaintiff must show 'the work environment and conditions of

employment <u>were so unbearable</u> that a reasonable person in that person's position

would be compelled to resign.'"  *Bryant*, 575 F.3d at 1298 (emphasis added) (citations omitted).  Accordingly, because the court has concluded above that Plaintiff lacks a sufficient level of evidence to prove actionable racial harassment, *a fortiori*, it similarly determines that Plaintiff's constructive discriminatory discharge claim is deficiently supported.

Alternatively, summary judgment in favor of Defendant on Plaintiff's constructive discharge discrimination claim is appropriate because, just like his hostile work environment theory, the undisputed facts show that he failed to take advantage of the established procedures that Defendant undisputedly had "in place for reporting and resolving conflicts" by complaining in a manner prescribed by that policy.  (*See* Doc. 36 at 25 (citing *Bryant*, 575 F.3d at 1299) (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 134 (2004))); *Suders*, 542 U.S. at 134 ("An employer may defend against [a constructive discharge claim] by showing both (1) that it had installed a readily accessible and effective policy for reporting and resolving complaints of sexual [or racial] harassment [or discrimination], and (2) that the plaintiff unreasonably failed to avail herself of that employer-provided preventive or remedial apparatus."); *Suders*, 542 U.S. at 134 ("This affirmative defense will not be available to the employer, however, if the plaintiff quits <u>in reasonable response to</u> <u>an employer-sanctioned adverse action officially changing her employment status or</u>

24

situation, for example, a humiliating demotion, extreme cut in pay, or transfer to a position in which she would face unbearable working conditions.") (emphasis added). No such employer-sanctioned adverse action is even alleged by Plaintiff.

Therefore, by virtue of Defendant's affirmative showing that it had well-known and formally established employee complaint procedures admittedly known by and available to Plaintiff that Plaintiff chose not to follow, coupled with the absence of any evidence that Defendant acted in such an extremely adverse manner toward Plaintiff that his decision to quit was a reasonable reaction, Plaintiff's constructive discharge count is due to be dismissed. Further, such ground for judgment in favor of Defendant is in addition to and entirely separate from whether Plaintiff has adduced sufficient *prima facie* proof of the more demanding standard of proof applicable to constructive discharge.

## Conclusion

Therefore, the court **EXPRESSLY FINDS** that there are no genuine issues of material fact and that Defendant is entitled to judgment as a matter of law. Accordingly, Defendant's motion for summary judgment is due to be **GRANTED**, and this action is due to be **DISMISSED WITH PREJUDICE**.

An order of final judgment will be separately entered.

**DONE** and **ORDERED** this the 21st day of September, 2010.

**VIRGINIA EMERSON HOPKINS**
United States District Judge